**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,

        Plaintiff,

v.

Terrence Terrell Mathews,
aka Terrence Terrell Matthews,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 13-79 ADM/SER
Civil No. 16-3583 ADM

_____

Julie E. Allyn, Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Terrence Terrell Matthews,[1] pro se.

_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Terrence Terrell Matthews' ("Matthews") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") [Docket No. 130][2] and Motion for Release of Information Regarding Brooklyn Park Police Records of K-9 Handler, Officer Pluman and Certification Records of His K-9 Partner "Ozzy" [Docket No. 134].

Matthews contends he was deprived of his constitutional right to effective assistance of counsel because his court-appointed attorney did not sufficiently challenge the reliability of two positive alerts by a trained police dog sniffing under the door of the apartment where Matthews lived. The dog sniffs were used to establish probable cause for a search warrant. The search

---

[1] Defendant refers to himself as "Matthews," and the Court will use that spelling of his name in this Memorandum Opinion and Order.

[2] All docket citations are to the Criminal Docket.

resulted in the seizure of the handgun that lead to Matthews being indicted as a felon in possession of a firearm.

Matthews also moves for an order compelling the Brooklyn Park Police Department to produce the canine's certification and training records. For the reasons set forth below, Matthews' Motions are denied.

## II.  BACKGROUND[3]

In January 2013, Melanie Hines ("Hines"), Matthews' occasional girlfriend and the mother of his child, contacted the Brooklyn Park Police Department to report a stolen firearm. United States v. Mathews, 784 F.3d 1232, 1233 (8th Cir. 2015). Hines identified Matthews, a felon, as a possible suspect in the theft investigation. Id. Hines also suggested that Matthews may be involved in trafficking heroin. Id. at 1233–34.

Later in January, Brooklyn Park Police Officer Pluman ("Officer Pluman") used a drug detecting canine certified by the United States Police Canine Association ("USPCA") to conduct a "narcotic sniff" in the common hallway area of Matthews' mother's apartment complex, where Matthews resided. Id. at 1234; Hr'g Tr., June 3, 2013 [Docket No. 31] at 11–12. The dog alerted for the presence of narcotics outside the door to Matthews' mother's apartment. Mathews, 784 F.2d at 1234. In February 2013, Officer Pluman returned with the same police dog and conducted a second narcotic sniff in the common hallway area outside the apartment. Id. The dog again alerted for narcotics at the lower door seam of the same apartment. Id. When

---

[3] The detailed background of Matthews' criminal case is set forth in previous orders by this Court and the Eighth Circuit, which are incorporated by reference. See United States v. Mathews, 784 F.3d 1232 (8th Cir. 2015); United States v. Mathews, No. 13-79, 2013 WL 5781566 (D. Minn. Oct. 25, 2013).

Officer Pluman led the dog to four other apartment doors in the same area, the dog did not alert for narcotics. Id.

On February 25, 2013, a state court judge issued a search warrant authorizing a search of Matthews' mother's apartment for evidence of drugs and firearms. Id. Brooklyn Park Police Detective Andrew Suerth ("Detective Suerth") swore to the affidavit supporting the warrant application. United States v. Mathews, No. 13-79, 2013 WL 5781566, at *5 (D. Minn. Oct. 25, 2013). Detective Suerth was the primary investigator on the case and had directed Officer Pluman to conduct the canine sniffs of Matthews' mother's apartment. Hr'g Tr. at 5–6. Detective Suerth's affidavit described the two dog alerts outside the apartment where Matthews resided. Mathews, 2013 WL 5781566, at *5. The affidavit further stated that the drug detection dog was a USPCA certified narcotics detector canine. Id. On February 27, 2013, the police executed the warrant for the apartment and located drug paraphernalia, a digital scale, trace amounts of heroin, and a firearm. Id. at *1.

On April 15, 2013, a federal grand jury returned an indictment charging Matthews with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). See Indictment [Docket No. 8].

Following the indictment, Matthews filed multiple pretrial motions, including a motion to suppress the evidence seized during the search of the apartment. See Mot. Suppress [Docket No. 21]. Matthews argued that the search warrant was not supported by probable cause because it "lacked specificity . . . with regard to the dog sniff." Id. at 1.

A hearing on Matthews' motions was held on June 3, 2013 before Chief Magistrate Judge Arthur J. Boylan. See Min. Entry [Docket No. 25]. Detective Suerth was the sole witness at the

hearing. See generally, Hr'g Tr. Detective Suerth's testimony included the certification and reliability of the canine that was used to conduct the sniff outside the door to Matthews' mother's apartment. Id. at 12–15, 19, 39. Detective Suerth stated that the drug detection dog had been cross-trained to detect the odor of narcotics as well as patrol apprehension. Id. at 12. Additionally, Detective Suerth testified that he had no reason to doubt the canine's reliability because Officer Pluman and the canine had performed narcotic sniffs for Detective Suerth in the past that had proven reliable. Id. at 15, 50–51.

Matthews' attorney cross-examined Detective Suerth on issues concerning the validity of the canine search, including the canine's certification. Id. at 39–40, 50–53, 67–69. For example, defense counsel entered a USPCA certification for the canine dated March 2013 into evidence in an effort to show that the dog had not been certified until a month after the February 25, 2013 search warrant was issued. Id. at 39–40. However, Detective Suerth testified on redirect that the canine had been certified since April 2012, several months before the narcotics sniff at issue. Id. at 61. Chief Magistrate Judge Boylan's Report and Recommendation [Docket No. 50] recommended the denial of Matthews' motion to suppress. The Court adopted the recommendation and denied the suppression motion on October 25, 2013. See Mem. Op. & Order [Docket No. 59]; Mathews, 2013 WL 5781566, at *4.

On November 21, 2013, a jury found Matthews guilty of being a felon in possession of a firearm. See Jury Verdict [Docket No. 83]. At sentencing, this Court applied a two-level specific-offense enhancement under § 2K2.1(b)(4) of the Sentencing Guidelines and imposed a 96-month term of imprisonment. See Sentencing J. [Docket No. 110] at 2; Sentencing Tr. [Docket No. 122] at 27–28.

Matthews appealed the denial of the motion to suppress evidence and the application of the two-level specific-offense adjustment under § 2K2.1(b)(4). The Eighth Circuit affirmed both rulings. Mathews, 784 F.3d at 1235–37. Matthews filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on October 19, 2015. Matthews v. United States, 136 S. Ct. 376 (2015).

Matthews has now filed the present § 2255 Motion, arguing that his counsel was ineffective in challenging the reliability of the canine sniffs as probable cause for a search warrant.[4] Matthews has also filed a motion for the release of information regarding Brooklyn Park police records for Officer Pluman and his canine partner, including the canine's certification records, training procedures, and techniques used for certification.

## III. DISCUSSION

Persons in federal custody are provided a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of his sentence under 28 U.S.C. § 2255. See United States v. Addonizio, 442 U.S. 178, 185 (1979). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal, and if uncorrected, would result in a complete miscarriage of justice." Walking Eagle v. United States, 742 F.3d 1079, 1081-82 (8th Cir. 2014) (quoting United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996)).

---

[4] Matthews also argues the Court erred by applying a two-level enhancement to his sentence under § 2K2.1(b)(4) of the Sentencing Guidelines. § 2255 Motion at 2. This argument is rejected because the Eighth Circuit has affirmed this Court's application of the § 2K2.1(b)(4) enhancement.

**A. Response Not Procedurally Barred**

As an initial matter, Matthews argues in his reply [Docket No. 137] dated February 2, 2017 that the Government's response to his Motions was untimely because it was postmarked December 29, 2016, eight days after the Court-ordered response deadline of December 21, 2016. See Order [Docket No. 133]. Matthews' argument is unavailing because the Government's response was electronically filed on the date of the deadline. See Government's Resp. [Docket No. 136] (electronically filed on December 21, 2016). Moreover, Matthews does not argue that he was prejudiced by the Government's alleged tardiness in mailing the response.

**B. No Ineffective Assistance of Counsel**

"To establish ineffective assistance of counsel within the context of section 2255 . . . a movant faces a heavy burden." Apfel, 97 F.3d at 1076. A defendant must show that "(1) his attorney's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney; and (2) he was prejudiced by the attorney's poor performance." Pierce v. United States, 686 F.3d 529, 531 (8th Cir. 2012) (citing Strickland v. Washington, 446 U.S. 668 (1984)). The defendant must overcome the "strong presumption" that his counsel provided reasonable assistance. Id. Overcoming that presumption requires a showing that, "in light of all the circumstances, the lawyer's performance was outside the range of professionally competent assistance." Cox v. Norris, 133 F.3d 565, 573 (8th Cir. 1997). If the defendant can show his counsel's performance was inadequate, he then must show that, but for the deficient performance, the outcome of his case would have been different. Id.

### 1. Counsel Provided Professionally Competent Assistance

Matthews argues his trial counsel:

> was ineffective due to the failure of not [i]nvestigating in depth and showing a prima facie showing that the drug detection dog was or was not reliable, which would have required the Government to turn over not only the dog's annual certification but also the dog's past and present and updated training records in it's [sic] entirety.

§ 2255 Motion at 3.  Matthews contends that the canine's training records would have shown the environment in which the canine was trained, which would have established whether the canine was trained to function reliably in an apartment complex with 100 residents with "various living habits, aromas and funks."  Id. at 7.  Matthews further argues that his attorney should have requested Officer Pluman's written report of the drug sniffs and should have subpoenaed Officer Pluman to testify at the suppression hearing.  In Matthews' view, this evidence was needed to obtain a detailed account of how the drug sniffs were conducted, including which entrance was used to enter the apartment complex, and how many different apartment units—each with their own scents and aromas—were passed before Officer Pluman and the canine reached Matthews' door.

Matthews cannot overcome the strong presumption that his attorney's assistance was reasonable.  The test for determining whether a drug dog's alert is sufficiently reliable to establish probable cause for a search warrant is "whether all the facts surrounding the dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." United States v. Jackson, 811 F.3d 1049, 1052 (8th Cir. 2016) (quoting Florida v. Harris, 133 S. Ct. 1050, 1058 (2013)).  The Supreme Court has held that "evidence of a dog's satisfactory performance in a certification or training program can

itself provide sufficient reason to trust his alert." Harris, 133 S. Ct. at 1057.  Thus, an affidavit supporting a search warrant "need only state the dog has been trained and certified to detect drugs and need not give a detailed account of the dog's track record or education." Jackson, 811 F.3d at 1052 (internal quotations omitted); see also United States v. Sundby, 186 F.3d 873, 876 (8th Cir. 1999) ("To establish the dog's reliability, the affidavit need only state the dog has been trained and certified to detect drugs.  An affidavit need not give a detailed account of the dog's track record or education.") (internal citations omitted).

Detective Suerth's affidavit supporting the search warrant stated that the canine was a "USPCA certified narcotics detector canine."  Thus, the affidavit sufficiently established the drug detection dog's reliability.  Nevertheless, Matthews' counsel contested the issue by challenging the date of the dog's certification and by probing into Detective Suerth's knowledge of the canine's past performance.  Therefore, his attorney's performance was well within the range of professionally competent assistance.

Matthews relies on Harris to argue that a defendant must have an opportunity to challenge evidence of the dog's reliability.  However, Matthews was given that opportunity, and his attorney probed the reliability of the dog by cross-examining Detective Suerth and by proffering evidence suggesting that the canine had not been certified at the time the drug sniffs were conducted (though later rebutted by redirect testimony).  Once the Government established through Detective Suerth's testimony that:  (1) the canine had been certified by a nationally-accredited organization at the time of the narcotics sniffs; (2) the canine had successfully found drugs before; and (3) the dog was cross-trained for both narcotics sniffs and patrol apprehension, Matthews' counsel made the strategic choice not to further investigate the canine's reliability.

"[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. Given the minimal information needed to show a canine's reliability for purposes of establishing probable cause, as well as the testimony produced by the Government on this issue, counsel's decision not to delve even further into the dog's training records was reasonable based on professional norms.

Matthews' argument that his attorney should have formally required production of Officer Pluman's report is also unavailing. The report was referenced and used during the motions hearing, which demonstrates that Matthews' counsel had access to the report. See Hr'g Tr. at 61. Nor did counsel's decision not to subpoena Officer Pluman fall below the level of reasonable assistance. Detective Suerth testified to the details in Officer Pluman's report; thus, Officer Pluman's testimony on this topic would have been duplicative. Moreover, Detective Suerth was the affiant on the search warrant, and thus his understanding of Officer Pluman's actions was more material in determining whether the affidavit was sufficient to establish probable cause than testimony from Officer Pluman would have been. Therefore, Matthews cannot satisfy the heavy burden of showing that his counsel's performance failed to conform to the degree of skill, care, and diligence of a reasonably competent attorney.

**2. No Prejudice**

Even if Matthews' attorney's performance could be viewed as deficient, Matthews' petition fails because he cannot show that he suffered prejudice as a result. To prove prejudice, a defendant must establish "a reasonable probability that, but for counsel's [actions or omissions], the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Here, the

search warrant affidavit set forth enough facts to establish that the drug detection sniffs were sufficient to show probable cause. Those facts included that the canine was trained and certified under a nationally accredited program to detect drugs, and that the dog had alerted twice on different dates for narcotics outside Matthews' apartment door. There is no reason to believe that any additional information would have altered the probable cause determination or resulted in the suppression of evidence. Therefore, Matthews suffered no prejudice as a result of his attorney's performance.

**C. Motion for Discover**

Matthews has also filed a motion for the release of Brooklyn Park Police records of Officer Pluman and certification records of his canine partner. Based on the Court's conclusion that he has failed to satisfy the standard for showing ineffective assistance of counsel, the records Matthews requests are not relevant to deciding the § 2255 Motion. Therefore, the motion for discovery of Brooklyn Park Police records is denied.

**D. Requests for Evidentiary Hearing, Appointment of Counsel**

Matthews also requests an evidentiary hearing and appointment of counsel. An evidentiary hearing is not warranted because the record and the parties' arguments definitively show that Matthews is not entitled to relief under § 2255. Engelen v. United States, 68 F.3d 228, 240 (8th Cir. 1995). Matthews' request for appointment of counsel is also denied. The court may appoint counsel to represent a financially eligible person seeking relief under § 2255 if "the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). Where an evidentiary hearing is not necessary, appointment of counsel is discretionary. Abdullah v. Norris, 18 F.3d 571, 573 (8th Cir. 1994). Here, the interests of justice do not require appointment of counsel because

Matthews' claims lack merit for the reasons described above.

## IV. CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court finds it unlikely that another court would decide the issues raised in this § 2255 Motion differently, or that any of the issues raised in Matthews' Motion would be debatable among reasonable jurists. Therefore, the Court declines to grant a certificate of appealability.

## V. CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Terrence Terrell Matthews' Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [Docket No. 130] is **DENIED**; and

2. Matthews' Motion for Release of Information Regarding Brooklyn Park Police Records of K-9 Handler, Officer Pluman and Certification Records of His K-9 Partner "Ozzy" [Docket No. 134] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: March 9, 2017.